IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| Salina Ingram, | ) | |
|---|---|---|
| | ) | Civil Action No. 6:16-745-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| Nancy A. Berryhill, Acting Commissioner of Social Security, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The plaintiff, Salina Ingram ("Ingram"), brought this action pursuant to the Social Security Act ("SSA"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(a), D.S.C., this matter was referred to a magistrate judge for pretrial handling. Before this court is the magistrate judge's Report and Recommendation ("Report"), recommending that the court affirm the Commissioner's decision. (ECF No. 19).[2] In the Report, the magistrate judge sets forth the relevant facts and legal standards, which are incorporated herein by reference. Ingram filed objections to the Report (ECF No. 22), and the Commissioner filed a response to those objections (ECF No. 23). Accordingly, this matter is now ripe for review.

---

[1] Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration on January 23, 2017. Pursuant to Fed. R. Civ. P. 25(d), Berryhill should be substituted for Carolyn W. Colvin as the defendant in this action.

[2] The magistrate judge's recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

1

## BACKGROUND

Ingram applied for DIB and SSI on January 13, 2011, alleging disability beginning on September 17, 2008. Ingram's application was denied initially and on reconsideration. On May 23, 2012, an Administrative Law Judge ("ALJ") heard testimony from Ingram and a vocational expert. On June 28, 2012, the ALJ issued a decision denying Ingram's claim.

Ingram sought review of her case by the Appeals Council. On May 29, 2013, the Appeals Council remanded the case for further administrative proceedings. On August 27, 2014, the ALJ held another hearing at which Ingram and a vocational expert testified. On November 6, 2014, the ALJ issued a second decision denying Ingram's claim. In his decision, the ALJ found that Ingram suffered from the following severe impairments: borderline intellectual functioning, depression, anxiety, and post-traumatic stress disorder ("PTSD"). (ECF No. 19 at 2). The ALJ found that, despite Ingram's limitations, jobs existed in significant numbers in the national economy that she could perform. (ECF No. 19 at 3). Ingram sought review of her case by the Appeals Council. The Appeals Council denied Ingram's second request for review, making the ALJ's decision the final decision of the Commissioner. The present action followed.

## STANDARD OF REVIEW

The federal judiciary has a limited role in the administrative scheme established by the SSA. Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined . . . as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). Thus, in its review,

the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] own judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589.

However, "[f]rom this it does not follow . . . that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Rather, "the courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

In her objections, Ingram contends that the magistrate judge erred by (1) finding that substantial evidence supported the ALJ's determination that Ingram did not meet Listing 12.05C, (2) improperly considering the opinion evidence of Dr. John C. Whitley, III, Ph.D., (3) improperly considering the opinion evidence of Dr. Gregory Fortner, M.D.'s report, and (4) improperly assigning little weight to Global Assessment of Functioning ("GAF") scores.

At the time of the ALJ's decision, Listing 12.05 provided, in pertinent part:

> *Intellectual Disability*: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22. [Prong 1]
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
>    \*\*\*
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 [Prong 2] and a physical or other mental impairment imposing an additional and significant work-related limitation of function [Prong 3];

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C (2014).[3]

## I.

First, Ingram alleges that the ALJ's determination that Ingram did not meet Listing 12.05C is erroneous. The magistrate judge stated that "the ALJ found that [Ingram] did not meet Prong 1 or Prong 2 of Listing 12.05C." (ECF No. 19 at 19). Ingram argues that the ALJ erred by relying on experts' diagnoses rather than IQ scores in determining Prong 2 of Listing 12.05C, asserted that the ALJ cited only one IQ test score, and did not discuss more recent scores or acknowledge the margin of error. (ECF No. 22 at 2–4). She further alleges that the ALJ improperly afforded too much weight to the state psychiatric specialists and failed to show that substantial evidence supports a finding that Ingram did not have deficits in adaptive functioning. *Id.* at 2–3.

Ingram's first objection restates the same argument that was presented to and addressed in depth by the magistrate judge. (ECF Nos. 16 at 14–18 and 19 at 18–21). *See* 42 U.S.C. § 405(g); *Craig*, 76 F.3d at 589; *Nichols v. Colvin*, No. 2:14-cv-50, 2015 WL 1185894, at *8 (E.D. Va. Mar. 13, 2015) (stating that "a mere restatement of the arguments raised in the summary judgment filings does not constitute an 'objection' for the purposes of district court review." (citation omitted)).

Ingram's argument was adequately addressed in the clear and well-reasoned Report. Like the magistrate judge, the court finds that the ALJ considered and discussed all of the IQ test scores in his 12.05 analysis. In section four of the ALJ's report, while analyzing Ingram's

---

[3] Listing 12.05C was amended as of January 17, 2017, pursuant to the final rule on Revised Medical Criteria for Evaluating Mental Disorders, in which the Social Security Administration states, "We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions. If a court reverses our final decision and remands a case for further administrative proceedings after the effective date of these final rules, we will apply these final rules to the entire period at issue in the decision we make after the court's remand." 81 Fed. Reg. 66138, 2016 WL 5341732 (Sept. 26, 2016).

capacity pursuant to Listing 12.05, the ALJ noted "that the record shows some IQ scores below 70," and cited to each of them, "Exhibits 1F [Dr. Spearman], 2F [Dr. Shear], 7F [Dr. Bradley], and 14F [Dr. Whitley]." (ECF No. 11-2 at 15). The ALJ also noted that Drs. Bradley and Fortner reported mild mental retardation following their respective examinations. *Id.*

However, as discussed by the magistrate judge, the ALJ addressed Ingram's 1992 IQ test score, conducted at the age of 13, which resulted in a score of 77 (verbal), 77 (performance), and 75 (full scale). (ECF Nos. 11-2 at 15 and 11-7 at 35). He also noted the fact that Dr. Shear, Dr. Whitley, and Dr. Phillips diagnosed Ingram with borderline intellectual functioning rather than mental retardation.[4] *See Jordan v. Comm'r of Soc. Sec.,* 470 F. App'x 766, 768–69 (11th Cir. 2012) ("A diagnosis of borderline intellectual functioning is "mutually exclusive of mental retardation."). Mild mental retardation is characterized by an IQ level of 50–55 to approximately 70, and borderline intellectual functioning is characterized by slightly higher IQ scores in the 71–84 range. *Diagnostic & Statistical Manual of Mental Disorders,* Fourth Edition, Text Revision, Washington, DC, American Psychiatric Association, 2000 ("*DSM–IV–TR*"). Accordingly, the ALJ determined the evidence to be conflicting as to whether Ingram functioned in the borderline intellectual functioning range or the mental retardation range.[5]

---

[4] Effective September 3, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." *See* 78 Fed. Reg. 46,499, 46,501 (to be codified at 20 C.F.R. pt. 404, subpt. P, App. 1). The change "does not affect the actual medical definition of the disorder or available programs or service." *Id.* at 46,500. As some of the evaluations and diagnoses discussed in this case took place before the change, both terms appear in this order.

[5] Further contributing to the conflicting evidence, the court notes that Drs. Shear and Whitley diagnosed Ingram with borderline intellectual functioning despite the results of their IQ tests falling within the mental retardation range. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(D)(6)(a) (The introductory section to the Disability Listings for Mental Disorders provides that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation."). Dr. Schear cautioned against interpreting the IQ test results too strictly based on his testing observations and considering all of his evidence, that Ingram's abilities are suspected to be in the borderline range. (ECF No. 11-7 at 7, 9). Likewise, Dr. Whitley gave a final diagnostic opinion of borderline intellectual functioning. While he did not address the validity of the intelligence test, he cautioned regarding a separate Personality Assessment Inventory test that "[s]ome concern about

"This circuit permits an ALJ to weigh conflicting IQ test results . . . ." *Hancock v. Astrue,* 667 F.3d 470, 474 (4th Cir. 2012) (citing *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987)). An ALJ may "reject [IQ] scores if they are inconsistent with other substantial evidence in the record such as conflicting professional opinions or other record evidence indicating that the claimant is historically higher achieving or has more advanced functional capacities than would be expected from someone with a below-average [IQ]." *Maybank v. Astrue,* No. C/A 4:08–0643–MBS, 2009 WL 2855461, at *11 (D.S.C. 31 Aug. 2009) (citing 20 C.F.R. § 404.1527(d)(2)); *see Popp v. Heckler,* 779 F.2d 1497, 1499 (11th Cir.1986) (finding that test results of this sort should be examined "to assure consistency with daily activities and behavior."). *See generally Lowery v. Sullivan,* 979 F.2d 835, 837 (11th Cir. 1992) ("[A] valid I.Q. score need not be conclusive of mental retardation where the I.Q. score is inconsistent with other evidence in the record of the claimant's daily activities and behavior.").

The ALJ gave the greatest weight to the opinions of Dr. Samuel Goots and Dr. Craig Horn, psychologists with substantial experience applying Social Security disability law and policy, who reviewed the evidence from varied sources including the conflicting evidence discussed above. (ECF No. 11-2 at 15). Both state agency psychologists considered Ingram's IQ testing and acknowledged her scores that were in the mid-60's but ultimately found that her adaptive functioning was higher and that her ability was in the borderline intellectual functioning range. (ECF Nos. 11-7 at 56–59 and 133–146). The ALJ found that the opinions of Drs. Goots and Horn, as well as Drs. Shear, Whitley, and Philips, who all diagnosed Ingram with borderline intellectual functioning, were consistent with Ingram's reported daily activities: driving

---

distortion of the clinical picture must be raised," as a result of "subtle suggestions that the client attempted to portray herself in a negative or pathological manner," and that the "clinical scale evaluations may overrepresent the extent and degree of significant test findings in certain areas." (ECF No. 11-7 at 108, 112).

everyday, including to the administrative hearing; performing household chores; cooking; laundry; dishes; vacuuming; mopping; sweeping; grocery shopping; and taking care of her children. (ECF No. 11-2 at 15). The ALJ found that such daily activities were more consistent with borderline intellectual functioning than with functioning at the mental retardation level. *Id*. The court agrees with the magistrate judge's recommendation and, based on the opinion and objective evidence in the record, finds that substantial evidence supports the ALJ's decision to disregard the IQ scores that were inconsistent with the other evidence in the record and the ALJ's decision that Ingram did not meet Listing 12.05.

Further, even if the ALJ had not rejected the conflicting IQ test scores and had found that Ingram satisfied Prong 2 of the Listing 12.05C analysis, the result would be the same due to Ingram's inability to satisfy Prong 1. *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) ("If [a claimant's] impairment satisfies the diagnostic description in the introductory paragraph [Prong 1] *and* any one of the four sets of criteria [paragraphs A through D], we will find that [the] impairment meets the listing.") (emphasis added). Accordingly, any error alleged by Ingram regarding Prong 2 would be harmless. *Austin v. Astrue*, C.A. No. 7:06-0622, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007) ("Errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error." (citing *Camp v. Massanari,* 22 Fed. App'x. 311 (4th Cir.2001)).

"The ALJ's rejection of Ingram meeting Listing 12.05C was based upon his finding that she failed to demonstrate evidence she met the 'deficits in adaptive functioning' (Prong 1)

requirement of the listing," according to Ingram. (ECF No. 16 at 16); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05 ("Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period."). Listing 12.05 does not define *adaptive functioning*. In determining Prong 1, courts in this district consider factors including IQ range and diagnosis, literacy, independence, care or supervision of others, and abilities. *See e.g., Weedon v. Astrue*, C.A. No. 0:11-02971-DCN-PJG, 2013 WL 1315311, at *5–7 (D.S.C. Mar. 28, 2013) (reviewing cases interpreting and applying 12.05); *see also Jackson v. Astrue,* 467 F. App'x 214, 217–18 (4th Cir. Feb. 23, 2012) (unpublished) ("Deficits in adaptive functioning can include limitations in areas such as communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety." (citing *Atkins v. Virginia,* 536 U.S. 304, 309 n. 3 (2002)).

Applying these factors to the record presented, the court finds that substantial evidence supports the ALJ's conclusion that Ingram failed to establish the requisite deficits in adaptive functioning pursuant to Prong 1. As discussed above, substantial evidence supports the ALJ's conclusion that Ingram had borderline intellectual functioning. *DSM–IV–TR* explains that the differentiation between mild mental retardation and borderline intellectual functioning is more dependent upon adaptive functioning than numerical scores. *See Diagnostic & Statistical Manual of Mental Disorders, supra.* Further the ALJ noted evidence from the record showing that Ingram's daily activities included driving, caring for her three children, shopping, paying bills, doing laundry, and preparing meals; that, while Ingram had some attention and academic deficits, the activities of daily living conducted by Ingram evince substantial ability with regard to concentration, persistence, and pace; and that the state agency psychologists assessed that

claimant's mental impairments caused only mild restriction in activities of daily living.[6] *See, e.g., Hancock v. Astrue,* 667 F.3d 470, 476, n.3 (affirming ALJ's consideration of the claimant's ability to perform tasks such as shopping, paying bills, and performing chores, stating, "[I]n finding no deficits in adaptive functioning, the ALJ . . . relied on the various tasks that Hancock is able to complete, which, alone, amount to substantial evidence supporting the ALJ's decision.").

Ingram's objection that the ALJ erred by giving too much weight to the opinions of Drs. Horn and Goots fails. Pursuant to the above discussion, the weight that the ALJ gave to the state agency psychologist opinions is supported by substantial evidence. The ALJ was required to consider the state agency physician assessments as opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence . . ."); SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

---

[6] The court observes that the ALJ's analysis of Listing 12.05 is combined with an analysis of Listings 12.02, 12.04, and 12.06 which address similar issues pertinent to the Listing 12.05C inquiry. (ECF No. 11-2 at 15–16).

Finally, regarding Ingram's margin of error argument, the Fourth Circuit has previously rejected the Listing 12.05 IQ margin of error argument in an unpublished opinion, criticizing it as an assertion that "close counts in horseshoes as well as the Listings." *Bennett v. Bowen*, 884 F.2d 1387, at *4 (4th Cir. 1989) (unpublished) (internal quotations omitted); see also *Burns v. Barnhart*, 312 F.3d 113, 125 (3d Cir. 2002) ("We conclude that if we were to read an error range of five points into the regulation, it would violate the plain language of the regulation . . . ."), *Dover v. Apfel*, 203 F.3d 834, at *2 (10th Cir. 2000) (unpublished) ("We note that all of the circuit courts that have considered similar 'margin of error' arguments with respect to Listing 12.05(C) have rejected it.").

## II.

In his second objection, Ingram asserts that the ALJ erred by failing to explain how he gave great weight to Dr. Whitley's opinion, but found throughout his decision that Ingram was capable of caring for her children. Dr. Whitley's opinion stated in 2007 that Ingram was "ill-equipped to manage children that present with significant behavioral and emotional issues." (ECF No. 11-7 at 114). Ingram reported being stressed and overwhelmed when caring for her very young children, ages 4 through 6. *Id*. at 105–114.

As the magistrate judge stated, the ALJ correctly noted that Ingram testified at the hearing that her three children, between 11 and 13 years old at the time of the hearing, lived with her and her mother and that Ingram took care of the children. (ECF No. 11-2 at 16–18, 20, 39–40, 50, 57). Ingram's testimony that she presently lives with her mother and cares for her children is uncontradicted in the record; Dr. Whitley's 2007 diagnosis does not affect the truth of Ingram's current living situation. Accordingly, considering the ALJ's analysis of the record and

opinion evidence as a whole, Ingram's objection fails to show that the ALJ's conclusion was unsupported by substantial evidence.

Further, Ingram argues that the ALJ failed to explain "how he gave great weight to Dr. Whitley's opinion but did not discuss the entire opinion and how it was incorporated into the RFC." (ECF No. 22 at 6). However, the ALJ discussed Dr. Whitley's opinion multiple times throughout his RFC analysis. (ECF No. 11-2 at 20–21). The fact that every detail from Dr. Whitley's report was not specifically mentioned does not cause the ALJ's analysis to be deficient. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision"). Rather, an ALJ "need only 'minimally articulate' his reasoning so as to 'make a bridge' between the evidence and his conclusions." *Jackson v. Astrue,* C.A. No. 8:08–cv–2855, 2010 WL 500449, at *10 (D.S.C. Feb. 5, 2010) (quoting *Fischer v. Barnhart*, 129 Fed. App'x 297, 303 (7th Cir. 2005)). "The touchstone for determining what evidence must be addressed is whether the evidence is so material that failing to address it would prevent the court from determining if the ALJ's decision was supported by substantial evidence." *Woodbury v. Colvin*, C.A. No. 9:15-2635-DCN, 2016 WL 5539525, at *3 (D.S.C. Sept. 30, 2016); *see also Bowen Transp. Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86 (1974) (stating "[w]hile [the court] may not supply a reasoned basis for the agency's action that the agency itself has not given, . . . [the court] will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.").

The ALJ acknowledged that "Dr. Whitley's opinions are *generally* consistent with the opinions of Drs. Horn and Phillips," including in his overall diagnostic impression of Ingram as borderline intellectual functioning. (ECF No. 11-2 at 21) (emphasis added). Ingram cites to no

authority in her brief (ECF No. 16 at 24) or objections (ECF No. 22 at 6) suggesting that any of the elements of Dr. Whitley's report affect the fact that the ALJ's conclusion is supported by substantial evidence. It is sufficiently apparent that by examining the medical and opinion evidence (and explicitly discussing Dr. Whitley's opinion multiple times in the RFC analysis), the ALJ considered Dr. Whitley's complete opinion along with the rest of the opinion evidence to determine Ingram's RFC.

### III.

Third, Ingram argues that the ALJ erred in considering Dr. Fortner's opinion. Ingram alleges that "the ALJ erroneously concludes that Dr. Fortner's report was likely based on his diagnosis of mental retardation." (ECF No. 22 at 7).[7] She states that it was reasonable for Dr. Fortner to encourage her to apply for disability. The court finds this objection somewhat unclear but finds that Ingram's argument offers no evidence or law to suggest that the ALJ's statement was in error or had any improper effect on his overall decision.

Further, Ingram stated that, "Dr. Fortner concurs with Dr. Whitley, whose opinion was given great weight, that Ingram would need a more stable environment in order to care for her children," and argued that the ALJ failed to consider this portion of the opinion. (ECF No. 22 at 7). First, as discussed above, Ingram subsequently moved in with her mother, and her three children live with her.[8] The ALJ mentioned Dr. Forster's opinion in both the Listing 12.05 analysis and the RFC analysis and noted that he gave it minimum weight due to the opinion's failure to describe any work-related limitations or state whether Ingram was "disabled" in addition to the fact that the opinion's diagnosis of mental retardation was contrary to the ALJ's

---

[7] In his opinion, Dr. Fortner stated, "I feel [Ingram's] primary problem is related to her developmental disability and her IQ."
[8] When Dr. Fortner assessed Ingram in 2008, the record shows that she was living at the Salvation Army and had been unsuccessful in getting her own residence. (ECF No. 11-7 at 10).

assessment of the weight of the evidence. (ECF No. 11-2 at 15, 21). As noted above, the ALJ does not need to specifically mention each piece of every expert's opinion. Thus, Ingram fails to demonstrate that the ALJ neglected to consider specific portions of Dr. Fortner's opinion.

## IV.

Fourth, Ingram argues that the ALJ erred by assigning little weight to the GAF scores of 37 [by Dr. Phillips] and 48 [by Dr. Bradley]. However, Ingram raised the same concerns regarding the ALJ's interpretation of the GAF scores in her brief (ECF No. 16 at 27–30) and the magistrate judge addressed her argument in the Report (ECF No. 19 at 22–23). The inquiry before the court is not whether the ALJ should have given greater weight to those opinions, but rather whether the weight given to those opinions by the ALJ is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see also Craig*, 76 F.3d at 589 (stating that the court does no "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]"). The magistrate judge addressed Ingram's argument regarding the GAF scores at length and the court finds that substantial evidence in the record supports the ALJ's assessment. *See Craig*, 76 F.3d at 589 ("Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' ") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Accordingly, Ingram's objections are overruled.

## CONCLUSION

Having conducted the required de novo review of the issues to which Ingram has objected, the court finds no basis for disturbing the Report. The court concurs with both the reasoning and the result reached by the Magistrate Judge in her Report, and finds that the ALJ's decision is supported by substantial evidence. Therefore, the court adopts the Report (ECF No. 19) and the Commissioner's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

                                                s/Timothy M. Cain
                                                United States District Judge

Anderson, South Carolina
September 25, 2017